IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JOSÉ FELICIANO, a/k/a "CHEO
FELICIANO", Individually and in
Representation of the Conjugal
Partnership formed by him and his
wife SOCORRO PRIETO LEÓN,

Plaintiffs

v.                                                    CIVIL 04-1809 (PG)

VALSYN, S.A., an alien
corporation; the ESTATE OF
GERALD MASUCCI,

Defendants

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the court on motion to dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim, filed by co-defendant, the Estate of Gerald Masucci (hereinafter "the Estate") on December 30, 2005, pursuant to the Federal Rules of Civil Procedure 12(b)(2), (3) and (6), respectively. (Docket No. 90.)

I.  PROCEDURAL and FACTUAL BACKGROUND

The original complaint was filed on August 6, 2004 by plaintiff José "Cheo" Feliciano and his spouse (hereinafter "plaintiffs") against Valsyn, S.A. (hereinafter "Valsyn").  The complaint alleged copyright infringement arising from Valsyn's unauthorized reproduction and distribution of sound recordings and musical

CIVIL 04-1809 (PG)                          2

compositions authored by Mr. Feliciano, the owner of copyrights to these allegedly

original musical works.  The Estate was joined in this action on October 12, 2005

(Docket No. 69.), following plaintiffs' unopposed motion to join additional parties,

filed on August 31, 2005.  (Docket No. 53.)

In the early 1970's, Mr. Feliciano allegedly became close personal friends with

Mr. Gerald Masucci, who owned and operated a number of record, film and music

publishing companies, including Fania, Vaya, Música Latina International, Fania

Records, among others (hereinafter "the Companies").  (Docket No. 1, Complaint,

at 4, ¶ 3.1.)  Plaintiff entered into an agreement with the Companies, such that the

Companies would obtain title to the recordings and compositions authored by

plaintiff, as well as the right to promote and distribute the music, paying royalties

to Mr. Feliciano.  (Id. ¶ 3.2 & at 6, ¶ 3.8.)

The Uruguay corporation, Valsyn, which was allegedly created by Mr. Gerald

Masucci, purchased the copyrights, master recordings, publishing rights,

manufacturing rights, distribution rights and rights to lease, sell, and exploit

musical compositions from the catalogues of the Companies (hereinafter "the Fania

Catalogues").  (Id. at 7, ¶ 3.9.)  The plaintiff was never made aware of this sale, but

alleges that the contractual and fiduciary duties which plaintiff originally entered

into with the Companies transferred to Valsyn along with the rights purchased.

(Id.)  The breach of these duties gave rise to the original complaint.  Plaintiff has

never received any royalty statements or checks from Valsyn.  (Id. at 9, ¶ 3.14.)

CIVIL 04-1809 (PG)                              3

In an agreement dated October 1, 1986, Valsyn leased out all rights to the Fania Catalogues to Sonido, Inc., thereby authorizing it to produce, manufacture, distribute and exploit the copyrighted works of the plaintiff.  (Id. ¶ 3.15.)  The original agreement was good for the term beginning October 1, 1986 and ending December 31, 1999. (Id.) Valsyn and Sonido modified this agreement on October 7, 1999, extending it through December 31, 2004.  (Id. citing Docket No. 1-2, at 13, Ex. C.)

In 1997, following the death of Mr. Masucci, Ms. Gosnell, the mother of one of Mr. Masucci's daughters, became the Executrix of the Gerald Masucci Estate (hereinafter "Ms. Gosnell" or "the Executrix").  (Docket No. 100-1, Pl.'s Mem. of Law in Opp'n to Mot. to Dismiss, at 3, ¶ 2, citing Ex. E, Tr. of Dep. of Stuart Jackson, at 27-28.) This Estate created a trust, known as the "Masucci Trust", which became the sole shareholder in Sonido, Inc.  The Executrix appointed Stuart Jackson, Esq. as attorney for the Estate.  (Docket No. 100-1, at 3, ¶ 3.)  Mr. Jackson was also acting attorney for Sonido, Inc., as he, for example, reviewed documents on behalf of Sonido.  (Docket No. 100-1, Ex. E, at 3, ll. 19-20.)

As early as 2003, Mr. Jackson and Ms. Gosnell began negotiating with third parties for the sale of the Fania Catalogue.  (Docket No. 100-1, at 4, ¶ 4.)  Plaintiffs allege that these efforts were undertaken for the benefit and in representation of the Estate, whereas the Estate insists that all actions taken regarding the sale of the Catalogue were made within the individual's capacities as attorney and vice-

CIVIL 04-1809 (PG)                          4

president of Sonido.   The first deal plaintiffs discuss was with Universal Music Group, in 2003, to sell the Fania Catalogue for $45,000,000.  (Docket No. 100-1, at 3, ¶ 2.)  This transaction was brought near to fruition, but was ultimately vetoed by Ms. Gosnell.  (Docket No. 16, Ex. E, at 16, ll. 19-24.)  Eventually, a deal was reached for the sale of the Fania Catalogue to Emusica, for a price of $11,000,000, on July 21, 2005.  (Docket No. 100-1, Ex. 10, at 2, ¶ 3.1(a).)

Plaintiffs claim that they first became aware of this sale through the publication of articles referring to the sale of the Fania Catalogue, primarily an article titled "Emusica Buys Fania Holdings" which was published on www.billboard.com on August 27, 2005.  (Docket No. 53-2, Ex. A.)  One line of this article reads as follows: "Representatives of Emusica, a Miami-based music company . . ., confirmed the purchase of Fania's assets from the estate of Fania founder Jerry Masucci."  (Id. ¶ 2.)

On August 31, 2005, plaintiffs filed a motion to join additional parties Emusica Entertainment Group ("Emusica") and the Estate.  (Docket No. 53-1.)  On September 22, 2005, Emusica Entertainment Group filed a motion in opposition.  (Docket No. 57-1.)   The motion was supported by the declaration of Stuart Livingston, president and chief executive officer of Emusica, claiming that Emusica was not a party to the purchase contract and had not received any assets under the contract.  (Id. Ex. 1.)  On same day, plaintiffs voluntarily withdrew the Rule 25(c) motion to join Emusica to the case.  (Docket No. 58.)

CIVIL 04-1809 (PG)                              5

The Estate initially failed to respond to the motion to join, and I thus ordered the motion granted as to the Estate on October 12, 2005. (Docket No. 69.) On December 30, 2005, the Estate filed this motion to dismiss based on lack of personal jurisdiction, improper venue and failure to state a claim. (Docket No. 90.) The Estate attached to that motion a sworn declaration by the Executrix, asserting that the Estate had never owned, received or purchased any assets from Valsyn. (Docket No. 90-3.) Both the plaintiffs and the Estate have since filed copies of the redacted sales agreement in question. (Docket No. 100-1, Ex. 10; Docket No. 103, Ex. 4.) Both copies demonstrate that the Estate is not listed as a party to the contract.

## II. ANALYSIS

The Estate, originally joined by plaintiffs' unopposed motion pursuant to Federal Rule of Civil Procedure 25(c), seeks to be dismissed from the action based on lack of personal jurisdiction, improper venue and failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(2), (3) & (6). Prior to addressing the specific motions, it is essential to understand the law surrounding Rule 25(c), and its application to this case. The subsequent analysis of the personal jurisdiction, venue and failure to state a claim motion will be heavily influenced by determinations which are dependent on the outcome of Rule 25(c)'s application.

A. Successorship and Transfer of Interest

Rule 25 of the Federal Rules of Civil Procedure provides for the substitution of parties to an action, in the cases of death, incompetency or transfer of interest

CIVIL 04-1809 (PG)                              6

during or even after the litigation of a lawsuit.  Transfers of interest are addressed

as follows in section (c):

> (c) Transfer of Interest.  In case of any transfer of interest,
> the action may be continued by or against the original
> party, unless the court upon motion directs the person to
> whom the interest is transferred to be substituted in the
> action or joined with the original party.

Fed. R. Civ. P. 25(c).

In applying Rule 25(c), courts have made the determination that the mere

transfer of interests to another party is insufficient; transfer of liability is also a

requirement.  Maldonado v. Valsyn S.A., 434 F. Supp. 2d 90, 92 (D.P.R. 2006).  In

assigning successor liability it is a generally accepted principle that "a corporation

normally may acquire another corporation's assets without becoming liable for the

divesting corporation's debts."  Ed Peters Jewelry Co. v. C & J Jewelry Co., 124 F.3d

252, 266 (1ˢᵗ Cir. 1997) (citing, inter alia, H.J. Baker & Bro. v. Orgonics, Inc., 554

A.2d 196, 205 (R.I. 1989)).  Maldonado clearly articulates the standard exceptions

to this general rule, through which a party may be recognized as a successor in

interest:

> [C]ourts have applied the doctrine of successor in interest
> in order to decide whether successor liability is possible
> and joinder warranted.  A corporation is a successor in
> interest of another if one of these four (4) requirements
> can be established: (1) the transferee of assets has made an
> assumption of liability (implied or explicit); (2) the
> transfer of assets is a de facto merger between the two
> corporations; (3) the transferee corporation is a mere

CIVIL 04-1809 (PG)                              7

                    continuation of the seller corporation; or (4) the transfer
                    of assets was fraudulent.

Maldonado v. Valsyn S.A., 434 F. Supp. 2d at 92.

        There are two essential factors which must be shown in order to establish the

Estate's successor liability to the plaintiffs.  These factors are (1) that the Estate is

the "person to whom" interest has been transferred, and (2) that through one of the

above exceptions, successor liability was created, warranting joinder.  I will address

the arguments put forth by the parties on each elements, as well as relevant law.

        1.  Estate as Transferee of Assets

        Plaintiffs assert that the sale of the Fania Catalogue resulted in proceeds to

which they are entitled, and which are now in the hands of the Estate.  It is further

asserted that Mr. Jackson and Ms. Gosnell's efforts in the negotiations and sale of

Valsyn's assets were in representation of the Estate and that the proceeds from this

sale were deviated into the hands of the Estate and/or Sonido.  In support of these

assertions, plaintiffs rely primarily on an article published on www.billboard.com,

and an assertion made in a complaint filed in a separate law suit, by a separate

party.

        The article published on www.billboard.com states that "representatives of

Emusica, a Miami-based music company . . . , confirmed the purchase of Fania's

assets from the Estate of Fania founder Jerry Masucci."  This statement is relied

upon by plaintiffs, who fail to address the fact that the actual contract of sale does

CIVIL 04-1809 (PG)                              8

not reflect participation of the Estate.  The plaintiffs also look to a complaint filed by Víctor Gallo, former president of Sonido, for support for their proposition.  The complaint, filed against Sonido, the Estate, and Mr. Jackson states, without substantive support, that "[u]pon information and belief, proceeds from the sale are held in the Estate and/or are held, were held or will be held in the Trust."  (Docket. No. 100-1, Ex. K, at 5, ¶ 23.)

Significantly, throughout plaintiffs' opposition memorandum, each time they attempt to portray the Estate as a transferee of interest, they are unable to phrase their statement as such.  Rather, plaintiffs repeatedly allege that the assets were transferred to "the Estate and/or Sonido, Inc."  After review of the record and exhibits presented in this case, I find no evidence to support a finding that the proceeds from the sale of the Fania Catalogue in July, 2005 are now in the hands of the Estate.  Without such evidence, it is difficult to see how the Estate could be characterized as a successor in interest.

2. Assignment of Successor Liability

Even if the Estate were to be deemed a transferee of assets, plaintiffs would still have to show that liability was transferred along with the interest, through one of the exceptions listed in Maldonado.  Plaintiffs contend the Estate carries successor liability, under the fraudulent transfer of assets exception.  This assertion is based on two similar but distinct rationales.  The first is that Valsyn was not given "full consideration" in return for the copyrights, which assigns a presumption of

CIVIL 04-1809 (PG)                              9

fraud, under Article 1249 of the Civil Code of Puerto Rico, P.R. Laws Ann., tit. 31, § 3498.  Second, "[i]t is evident and apparent that this transfer of the copyrights, and the deviation of the purchase price to the hands of the Estate . . . and/or its corporation Sonido, Inc., were acts done with the intention of avoiding, hindering or delaying Valsyn's creditors."  (Docket No. 100-1, at 10, ¶ 2.) (Emphasis ours.) Plaintiffs argue that mere fraudulent intention on the part of the Estate warrants the assignment of successor liability.  I will address these two arguments for fraud independently.

As to the presumption of fraud where full consideration is lacking, the strongest support for this proposition is found in P.R. Laws Ann. tit. 31, § 3498, entitled "Contracts presumed in fraud of creditors."  The statute essentially states that any contract in which a debtor alienates goods for free (or gratuitously) may be considered fraudulent against any creditors.  Id.

In attempting to establish the inadequacy of the consideration given to Valsyn through the sale of the Fania Catalogue, plaintiffs speculate at length, based on the scant evidence on record.  Plaintiffs assert that the Estate's funding of Valsyn's legal costs is a clear indication that the decisions made in regard to the sale transaction are attributable to the Estate and that Valsyn is merely a puppet corporation.  To the contrary, Mr. Jackson makes reference in his deposition to the fact that although Valsyn's legal fees were paid out of Estate funds, this was taken into consideration in determining the ultimate amount to be paid to Valsyn from the proceeds of the

CIVIL 04-1809 (PG)                              10

sale, figuring for the repayment to the Estate of that money.  This factor may serve to at least partially explain the difference between Valsyn's due consideration and the amount of the check directed to Valsyn from the proceeds of the sale.

Additionally, plaintiffs provide substantial historical information surrounding the negotiating of the sale.  For example, the negotiated sale of the Fania Catalogue to Universal Music in 2003, for $45,000,000, was close to completion when Ms. Gosnell vetoed the agreement at the last moment.   As the negotiations continued, the price of the Catalogue quickly dropped to $11,000,000.  While this change in numbers is drastic, it is not possible to draw an inference that the sale was fraudulent, without further information.  It is not my position to speculate what alternative factors may have caused the drop in price, but I am unable to make conclusions as to what Valsyn's due consideration should have been based on the record before me.  More importantly, I am unable to find, based on the evidence before me, that the consideration was so insufficient as to lead to a presumption of fraud.

Plaintiffs argue that the deviation of the purchase price ($45,000,000 to $11,000,000) to the hands of the Estate and/or Sonido were acts done with the intention of avoiding, hindering or delaying Valsyn's creditors, and therefore constitute fraud.  In support of this proposition, plaintiffs seek support from case law.  See, e.g., E.D. Peters Jewelry Co. v. C & J Jewelry Co., 124 F.3d at 266. Although the case supports the proposition that where a transfer of interest is

CIVIL 04-1809 (PG)                        11

performed with the intention of avoiding creditors, it is inappropriate to apply this

theory to the case at hand for two reasons.  First, the accusations offered by

plaintiffs are empty shells.   Although plaintiffs spew information which is

theoretically indicative of the Estate's involvement and manipulation of the sale

negotiation and the channeling of proceeds from that sale, I do not find that the

evidence provided to this court is sufficient to support these allegations.  Something

more would be necessary to find that there was intention on the part of the Estate

to avoid Valsyn's creditors.   Second, the language of plaintiffs' allegation is

insufficient to firmly implicate the Estate.  By stating that the proceeds of the sale

were received by the Estate and/or Sonido, the plaintiffs have clearly left open a

question of which party in fact received the funds.  Based on this insufficient level

of knowledge, the Estate can not be held liable for funds which it may or may not

have received.

Ultimately, there is one major distinction between this case and all of the

cases cited in the memoranda, as well as any cases which I refer to.  The distinction

is that in this case, as opposed to the other cases reviewed, the party sought to be

joined through successor liability was not a party to the transactions or events

which led to the suit, nor was it a corporation which had received assets from a

business involved in the transaction.  See Minn. Mining & Mfg. Co. v. Eco Chem,

Inc., 757 F.2d 1256, 1258-59 (Fed. Cir. 1985) (successor liability is established

because the company subject to suit was disbanded and immediately re-established

CIVIL 04-1809 (PG)                                12

under another name, in a different state, with the same shareholders and operations); <u>Ed Peters Jewelry Co. v. C & J Jewelry Co.</u>, 124 F.3d at 266 (company sought to be joined, Anson, acquired all assets from predecessor company, C & J, and carried on in the same business).

I have been unable to locate any instance, in which a party is sought to be joined in a suit, but has no evidenced contractual relationship to the transaction allegedly giving rise to a successor/predecessor status. I find it not appropriate in this case to assign successor liability to a party which was not involved in the prior related transactions. Therefore, I now address the Estate's motions under the theory that they are neither transferees of interest nor successors in liability.

B. <u>Personal Jurisdiction</u>

The Estate moves to be removed from this action, pursuant to Federal Rule of Civil Procedure 12(b)(2), contending that this court does not have appropriate in personam jurisdiction. As the Estate is not a resident of Puerto Rico, a federal court exercising diversity jurisdiction is generally required to show sufficient contacts to satisfy both the Puerto Rico long-arm statute and the Fourteenth Amendment. <u>See</u> <u>Ticketmaster-N.Y., Inc. v. Alioto</u>, 26 F.3d 201, 204 (1st Cir. 1994).

Plaintiffs have indicated and relied upon a third method through which this court may gain personal jurisdiction over the Estate. Many courts have interpreted Rule 25(c) as allowing for a court to gain personal jurisdiction over a person found to be a successor in interest, merely as a consequence of that status, and regardless

CIVIL 04-1809 (PG)                    13

of the amount of contact with the state.  <u>LiButti v. United States</u>, 178 F.3d at 123;

<u>see, e.g.</u>, <u>Explosives Corp. of Am. v. Garlam Enter. Corp.</u>, 817 F.2d at 906; <u>Minn.</u>

<u>Mining & Mfg. Co. v. Eco Chem, Inc.</u>, 757 F.2d at 1263.  However, as noted above,

the Estate is not a successor in interest to Valsyn, and the court will therefore have

to gain jurisdiction over the Estate through traditional channels or not at all.

       The Puerto Rico Long-Arm Statute, as defined in P.R. Laws Ann. tit. 32, App.

III, Rule 4.7, may authorize courts in Puerto Rico to assume jurisdiction over

parties not domiciled in Puerto Rico if the claim arises in relation to:   "(1)

[t]ransacted business in Puerto Rico personally or through an agent; or(2)

participated in tortious acts within Puerto Rico personally or through his agent; or

. . . (5) owns, uses or possesses, personally or through his agent, real property in

Puerto Rico." P.R. Laws Ann. tit. 32, App. III, Rule 4.7(a)(1), (2), (5) (2001). The

evidence on record fails to establish that the Estate, which is domiciled in New York,

meets any of the above criteria.  The affidavit sworn to by Ms. Gosnell, Executrix of

the Estate, affirms that there is not and has never been any business interaction,

tortious act or ownership or use of real property in Puerto Rico by the Estate or its

agents.  Therefore, I find that the Puerto Rico Long-Arm Statute does not authorize

this court to take jurisdiction over the Estate.

       As it is required that the court satisfy both the long-arm statute and the due

process clause, the lack of authorization under the Puerto Rico Long-Arm Statute,

renders it irrelevant whether the Estate could be shown to have sufficient minimum

CIVIL 04-1809 (PG)                         14

contacts with Puerto Rico to satisfy the Due Process Clause of the Fourteenth

Amendment.[1]   It is worth noting, however, that the likelihood of establishing

sufficient minimum contacts with Puerto Rico is slim, based on the evidence before

the court.  The First Circuit articulated the three-prong test for determining whether

there were sufficient contacts to make it reasonable for the state to enforce

obligations on a party for actions committed in that state.

> First, the claim underlying the litigation must directly
> arise out of, or relate to, the defendant's forum-state
> activities.  Second, the defendant's in-state contacts must
> represent a purposeful availment of the privilege of
> conducting activities in the forum state, thereby invoking
> the benefits and protections of that state's laws and making
> the defendant's involuntary presence before the state's
> courts foreseeable.  Third, the exercise of jurisdiction must,
> in light of the Gestalt factors, be reasonable.

Sawtelle v. Farrell, 70 F.3d 1381, 1389 (1st Cir. 1995) (citing United Elec., Radio &

Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir.

1992)).

       I do not find evidence on record indicating any action of the Estate within the

Commonwealth of Puerto Rico, and the minimum contacts test can therefore not be

met.

       As this court can not take jurisdiction over the Estate by means of the long-

arm statute or through due process, and as the jurisdiction over Valsyn can not be

---

       [1]See, for example, Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945), for a
glimpse of the historical debate around the constitutional limits for exercising
personal jurisdiction over a foreign defendant.

CIVIL 04-1809 (PG)                    15

transferred to the Estate as a successor in interest, I recommend that the Estate's motion to dismiss based on Rule 12(b)(2) be GRANTED.

C. <u>Venue</u>

Defendants also move to dismiss the case based on improper venue, under Federal Rule of Civil Procedure 12(b)(3).  Plaintiffs apply essentially the same argument to this motion as they applied to the jurisdictional motion.  That is, if the Estate is a proper successor in interest to Valsyn, and venue is properly established as to Valsyn, than the venue should not be interrupted by the addition of a party. "Like jurisdiction, venue 'once properly established . . . [is] unaffected by the change in parties, since it relates to the institution of the suit.'"  <u>Minn. Mining & Mfg. Co. v. Eco Chem, Inc.</u>, 757 F.2d at 1264 (quoting 4 <u>Moore's Federal Practice</u> ¶ 25.05, 517 n.1).

Plaintiffs argue, and defendants concede, that venue is appropriate in Puerto Rico as to defendant Valsyn under 28 U.S.C. § 1391(d)[2], as well as 28 U.S.C. § 1400(a).[3]  Neither of these statutes apply to the Estate, however, as it is not an alien, and it can not be found in Puerto Rico.  However, if the Estate were found to be a successor in interest, and substituted for Valsyn in the same cause of action, then venue would transfer to the Estate, according to <u>Minn. Mining & Mfg. Co.</u> Since

---

[2]"An alien may be sued in any district."

[3]"Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found."

CIVIL 04-1809 (PG)                            16

this is not the case, I therefore address the question of whether the Estate would be in the proper venue in Puerto Rico under any other statute.

Title 28, United States Code, section 1391(b), defines the three general methods through which venue will be proper: "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(b).

When a motion to dismiss for improper venue is filed pursuant to Federal Rule of Civil Procedure 12(b)(3), it places the burden on the defendant to show that the action was instituted in a permissible forum. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1352, at 265 (2d ed. 1990). Neither the factual allegations of the plaintiffs nor the motion to join the Estate assert that the Estate resides in Puerto Rico (as it does not) or that the Estate can be found in Puerto Rico, thereby ruling out qualification under options (1) and (3). As to the second option, if the events giving rise to the claims could be said to have occurred primarily in Puerto Rico, than venue may be proper under section 1391(b)(2). However, plaintiffs' failure to make any such allegation or argument again precludes the application of this statute to the Estate.

CIVIL 04-1809 (PG)                    17

        In view of the above, I recommend that the Estate's motion to dismiss under

Federal Rule of Civil Procedure 12(b)(3) be GRANTED.

        D.  <u>Claim Upon Which Relief Can be Granted</u>

        Finally, defendants argue that the Estate should be dismissed from the case

under Federal Rule of Civil Procedure 12(b)(6).  Rule 12(b)(6) allows a litigant to

move for dismissal of an action for "failure . . . to state a claim upon which relief can

be granted . . . ."  Fed. R. Civ. P. 12(b)(6).  Dismissal under the rule is not

appropriate "unless it appears beyond doubt that the plaintiff can prove no set of

facts in support of his claim which would entitle him to relief."  <u>Conley v. Gibson</u>,

355 U.S. 41, 45-46 (1957).  In ruling upon a Rule 12(b)(6) motion, the court must

accept as true all the well-pleaded factual allegations in the complaint and construe

all reasonable inferences in favor of the plaintiff.  <u>Perry v. New England Bus. Serv.,</u>

<u>Inc.</u>, 347 F.3d 343, 344 (1st Cir. 2003) (citing <u>Beddall v. State St. Bank & Trust Co.</u>,

137 F.3d 12, 16 (1st Cir. 1998)).  The complaint should only be dismissed if it

appears that, under the facts alleged, the plaintiff cannot recover under any viable

theory.  <u>Campagna v. Mass. Dep't of Envtl. Protection</u>, 334 F.3d 150, 154 (1st Cir.

2003) (quoting <u>Nethersole v. Bulger</u>, 287 F.3d 15, 18 (1st Cir. 2002)).  Accordingly,

to survive a 12(b)(6) motion, plaintiff must present "factual allegations, either

direct or inferential, respecting each material element necessary to sustain recovery

under some actionable legal theory."  <u>Romero-Barceló v. Hernández-Agosto</u>, 75 F.3d

23, 28 n.2 (1st Cir. 1996) (quoting <u>Gooley v. Mobile Oil Corp.</u>, 851 F.2d 513, 515 (1st

CIVIL 04-1809 (PG)                    18

Cir. 1988)).  Even though all inferences must be construed in favor of the plaintiff, the court need not give weight to "bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, [and] outright vituperation . . . . " Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (quoting Correa-Martínez v. Arrillaga-Beléndez, 903 F.2d 49, 52 (1st Cir. 1990)).

Defendants stress that the Estate has provided uncontroverted evidence that it is neither a party to the contract of sale which is at issue in this case, nor a transferee of Valsyn's assets.  As such, the Estate can not be qualified as a successor in interest to Valsyn, which leads to the conclusion that they are not liable to plaintiffs for Valsyn's debts, leaving plaintiffs without a claim against the Estate upon which relief can be granted.  As plaintiffs' claim is dependent upon the finding that the Estate is a successor in interest to Valsyn, and as they have not provided sufficient evidence to substantiate such a claim, it is also recommended that the Estate's motion to dismiss for failure to state a claim be GRANTED.

IV.  CONCLUSION

For the reasons stated, I am not able to find that the Estate was a successor in interest to Valsyn, which leaves (1) this court without jurisdiction over the Estate, (2) this court as an improper venue for the Estate, and (3) the plaintiffs without a valid claim against the Estate.  I therefore recommend that the Estate's motion under Rule 12(b)(2)(3) and (6) be GRANTED, and that the complaint as to the Estate of Gerald Masucci be DISMISSED.

CIVIL 04-1809 (PG)                            19

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation.  The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections.  Failure to comply with this rule precludes further appellate review.  See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 4th day of October, 2006.

                                S/ JUSTO ARENAS
                        Chief United States Magistrate